UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MICHAEL GIFFORD** | **CIVIL ACTION** |
| **VERSUS** | **NO. 07-1063** |
| **TIMOTHY WILKINSON, WARDEN** | **SECTION "N"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

**I.  Factual Background**

At the time of the filing, the petitioner, Michael Gifford ("Gifford"), was a convicted inmate incarcerated in the Winn Correctional Center in Winnfield, Louisiana.[2] By letter filed October 17,

---

[1] Under Title 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 1.

2007, Gifford notified the Court he was released from the physical custody of the Louisiana Department of Corrections.[3]

On May 3, 2002, Gifford was charged by bill of information in Tangipahoa Parish Case No. 101930 with a fourth-offense driving while intoxicated.[4] The record reflects that the three prior DWI offenses were Hammond City Court Case Nos. 1923026 and 1924445 and Tangipahoa Parish Case No. 100199.[5] Gifford entered pleas of no contest on October 9, 2001, in the two Hammond City Court cases.[6] In the first case, No. 1923026, he was sentenced to pay a $400 fine plus costs and 150 days in prison to be suspended upon payment of the fine and costs at which time he would be placed on supervised probation for 12 months.[7] In the second case, No. 1924445, he was sentenced

---

[3]Title 28 U.S.C. § 2241(d) "gives the United States district courts jurisdiction to entertain petitions for habeas relief only from persons who are 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Maleng v. Cook*, 490 U.S. 488, 490 (1989) (quoting 28 U.S.C. § 2241(c)(3) (2006)) (emphasis added); 28 U.S.C. § 2254(a) (2006); *Dickerson v. Louisiana*, 816 F.2d 220, 224 (5th Cir. 1987) (To be eligible for federal habeas corpus relief, a petitioner must be "in custody" and have exhausted state court remedies). The United States Supreme Court has interpreted this statutory language to require that the habeas petitioner be "in custody" for the conviction or sentence under attack at the time the petition is filed. *Lackawanna County Dist. Attorney v. Coss*, 121 S. Ct. 1567, 1572 (2001); *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (whether a petitioner is "in custody" is determined as of the date on which the habeas petition is filed); *Maleng*, 490 U.S. at 490-91 (citing *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968)); *Port v. Heard*, 764 F.2d 423, 425 (5th Cir. 1985). The *Maleng* Court further held that a habeas petitioner is not considered to be "in custody" when his sentence has expired for the challenged conviction. *Maleng*, 490 U.S. at 492 (citing *Carafas*, 391 U.S. at 238); *accord Steverson v. Summers*, 258 F.3d 520, 524 (6th Cir. 2001); *Pleasant v. State*, 134 F.3d 1256, 1258 (5th Cir. 1998). However, when the jurisdictional prerequisite of custody is met at the time of filing, jurisdiction is not defeated by the petitioner's subsequent release from custody. *Carafas*, 391 U.S. at 238; *Port*, 764 F.2d at 425. Gifford was in custody at the time of the filing of the instant petition and this Court retains jurisdiction over his petition.

[4]St. Rec. Vol. 1 of 3, Bill of Information (No. 101930), 5/3/02.

[5]*Id.*; *see also*, Bill of Information (No. 100199), 11/14/01.

[6]St. Rec. Vol. 1 of 3, Hearing Transcript (Nos. 1923026, 1924445), 10/9/01.

[7]St. Rec. Vol. 1 of 3, Hearing Transcript (Nos. 1923026, 1924445), 10/9/01; St. Rec. Vol. 1 of 3, Extract of Minute Entry (No. 1923026), 10/9/01.

as a second DWI offender to pay a $750 fine plus costs and 135 days suspended upon payment of the fine and costs, at which time he would be placed on supervised probation for 24 months.[8]

The third DWI offense, charged in No. 100199, was handled by in the 22nd Judicial District Court for St. Tammany Parish simultaneously with a fourth-offense charged on May 3, 2002, in No. 101930. The record further reflects that, on November 12, 2002, Gifford entered a plea of guilty to the third-offense DWI in No. 100199 and to the fourth offense DWI in No. 101930, the conviction being challenged in this federal habeas petition.[9]

While awaiting sentencing on these two offenses, Gifford was charged on December 23, 2002, by bill of information in Tangipahoa Parish Case No. 104937, with another fourth-offense DWI, referred to by the Trial Court as "the second fourth offense DWI."[10]

On April 23, 2003, the Trial Court sentenced Gifford in No. 100199 (the third-offense DWI case) to serve five years in prison at hard labor which was suspended except for 30 days to be served without benefit of parole, probation, or suspension of sentence, with credit for time served.[11] He was also ordered to receive four to six weeks in an inpatient treatment facility, to forfeit his vehicle to be sold, to have an ignition interlock device placed on any vehicle he had access to drive, to pay a $2000 fine and court costs, and to serve 30 eight-hour days of community service.

At the same hearing, the Trial Court sentenced Gifford in No. 101930 (the first fourth-offense DWI case being challenged here), in accordance with a plea agreement, to serve 15 years

---

[8]St. Rec. Vol. 1 of 3, Hearing Transcript (Nos. 1923026, 1924445), 10/9/01; St. Rec. Vol. 1 of 3, Extract of Minute Entry (No. 1924445), 10/9/01.

[9]St. Rec. Vol. 1 of 3, Hearing Transcript (Nos. 100199, 101930), 11/12/02; Plea Minutes, 11/12/02.

[10]St. Rec. Vol. 1 of 3, Bill of Information (Nos. 104937), 2/20/03.

[11]St. Rec. Vol. 1 of 3, Hearing Transcript (Nos. 100199, 101930, 104937), 4/23/03.

in prison at hard labor, which was suspended except for 60 days to be served without benefit of parole, probation, or suspension of sentence, with credit for time served. He also was ordered to pay a $5,000 fine plus court costs, to participate in at least six weeks of inpatient substance abuse treatment, and to perform 60 eight-hour days of community service. Gifford also volunteered to accept in-home incarceration.

Three months later, on July 22, 2003, the Trial Court held a hearing related to Nos. 101930 and 104937, the two fourth-offense DWI cases.[12] After discussions between counsel and the Court, Gifford entered a plea of guilty to violating the probation, i.e., suspended sentence with in-home incarceration, ordered on April 23, 2003, in No. 101930, the first fourth-offense DWI. The Court made his original 15 year sentence executory. However, as part of the revocation plea agreement, the Court vacated the 15 year sentence and re-sentenced Gifford to serve 10 years at hard labor without benefit of parole, probation, or suspension of sentence. Thereafter, the State entered a nolle prosequi in No. 104937 and any remaining separately charged misdemeanor traffic offenses. Gifford did not seek reconsideration of his sentence or seek further review of the revocation or re-sentencing.

## II.    Procedural History

Over eight months later, on April 1, 2004, Gifford submitted a Motion to Correct Illegal Probation Violation, which was filed by the Trial Court on April 6, 2004, in No. 101930.[13] Gifford raised two claims: (1) the Trial Court erred when it revoked his probation then vacated the original sentence to impose the 10 year sentence; and (2) the Trial Court erred in revoking a probation period

---

[12]St. Rec. Vol. 1 of 3, Sentencing Transcript (No. 101930), 7/22/03.

[13]St. Rec. Vol. 2 of 3, Motion to Correct an Illegal Probation Violation, 4/6/04.

that was never made active since he was not released from jail after that sentencing because of other pending charges. At a hearing held on July 13, 2004, the Trial Court denied the motion.[14] Gifford did not seek review of this ruling.

Six months later, on January 31, 2005, Gifford submitted an application for post-conviction relief, which was filed by the Trial Court on February 7, 2005.[15] Gifford raised four grounds for relief: (1) his revocation and sentence violated the prohibition against double jeopardy, (2) counsel gave ineffective assistance during the revocation hearing, (3) the Trial Court lacked jurisdiction to revoke probation and sentence him, and (4) he was denied due process in the proceedings against him. The Trial Court denied the application at a hearing held on April 11, 2005.[16]

Gifford's subsequent writ application to the Louisiana First Circuit was denied without reasons on September 19, 2005.[17] The Court also denied his request for rehearing on November 9, 2005.[18] The Louisiana Supreme Court also denied without reasons the related writ application to that Court on September 22, 2006.[19]

---

[14]St. Rec. Vol. 2 of 3, Transcript, 7/13/04.

[15]St. Rec. Vol. 3 of 3, Uniform Application for Post-Conviction Relief, 2/7/05 (signed 1/31/05).

[16]St. Rec. Vol. 1of 3, Hearing Transcript, 4/11/05 (Nos. 101930); *see also*, St. Rec. Vol. 2 of 3, Answer to Application for Post-Conviction Relief, 4/6/05.

[17]St. Rec. Vol. 2 of 3, 1st Cir. Order, 2005-KW-1184, 9/19/05. The record does not contain a copy of this writ application filed May 26, 2005. The Court obtained the filing date from the office of the clerk of the Louisiana First Circuit. *See also*, St. Rec. Vol. 2 of 3, Notice of Intent to Seek Writs, 4/18/05; Trial Court Order, 4/26/06 (granting to May 26, 2005); Motion for Extension of Time, 2005-KM-1013, 5/13/05; 1st Cir. Order, 2005-KM-1013, 6/24/05.

[18]St. Rec. Vol. 2 of 3, 1st Cir. Order, 2005-KW-1184, 11/9/05.

[19]*State ex rel. Gifford v. State*, 937 So. 2d 381 (La. 2006). The record does not contain a copy of this writ application. The Court obtained the filing date of December 8, 2005, from the office of the clerk of the Louisiana Supreme Court.

In the meantime, on November 4, 2005, Gifford filed a Motion to Correct Illegal Probation Violation in the Trial Court.[20] The Court denied the motion as repetitive on November 8, 2005.[21]

Gifford also filed a second application for post-conviction relief with the Trial Court on March 6, 2006, in which he raised three grounds for relief:[22] (1) constructive denial of counsel during the evidentiary hearing; (2) his plea to the revocation was unknowing and involuntary and based on erroneous advice of counsel; and (3) the Trial Court erred in failing to give him notice of his right to appeal and of the periods for filing for post-conviction relief. The Trial Court denied relief noting that he was advised of his rights at the hearing held April 23, 2003.[23] The Louisiana First Circuit denied Gifford's subsequent writ application without reasons on July 24, 2006.[24]

Several months later, on December 18, 2006, Gifford filed a motion with the Trial Court seeking to enforce his plea agreement and to vacate the probation revocation.[25] Gifford based his motion on the assertion that he was never on probation for it to have been revoked. On February 1, 2007, the Trial Court denied the motion as repetitive of issues already resolved.[26]

---

[20]St. Rec. Vol. 2 of 3, Motion to Correct an Illegal Probation Violation, 11/4/05.

[21]St. Rec. Vol. 2 of 3, Trial Court Order, 11/8/05.

[22]St. Rec. Vol. 3 of 3, Uniform Application for Post-Conviction Relief, 3/6/06 (signed 2/24/06).

[23]St. Rec. Vol. 3 of 3, Trial Court Order, 3/8/06.

[24]St. Rec. Vol. 2 of 3, 1st Cir. Order, 2006-KW-0963, 7/24/06. The record does not contain a copy of this writ application filed May 17, 2006. The Court obtained the filing date from the office of the clerk of the Louisiana First Circuit. *See also*, St. Rec. Vol. 2 of 3, Notice of Intent to Seek Writs, 4/10/06; Trial Court Order, 4/17/06.

[25]St. Rec. Vol. 3 of 3, Motion to Enforce Plea Agreement/Vacate Illegal Probation Violation, 12/18/06.

[26]St. Rec. Vol. 3 of 3, Trial Court Order, 2/1/07. Gifford filed a notice of his intent to seek review in the Louisiana First Circuit, however, the record does not contain pleadings dated thereafter. *See* St. Rec. Vol. 3 of 3, Notice of Intent to Seek Writs, 2/26/07; Trial Court Order, 2/27/07.

**III. Federal Petition**

On January 3, 2007, the Clerk of United States District Court for the Middle District of Louisiana filed Gifford's petition for federal habeas corpus relief, in which he raised four grounds for relief:[27] (1) the Trial Court violated the prohibition against double jeopardy; (2) ineffective assistance of counsel where counsel advised him to enter a plea of guilty to probation never ordered; (3) the Trial Court exceeded its jurisdiction; and (4) denial of due process in the revocation process. The petition was transferred to this Court on February 16, 2007.[28]

The State filed an answer in opposition to Gifford's petition with an attachment thereto. In spite of this Court's order to do so, the State failed to brief the matters of exhaustion, timeliness, or procedural default. Instead, in the untitled attachment to the answer, the State argued that the claims lacked merit.[29] Gifford filed a traverse in reply to the State's answer reurging his claims and arguing that they do have merit.[30]

**IV. Standards of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[31] applies to this petition, which is deemed filed in this Court under the federal

---

[27]Rec. Doc. No. 1-2.

[28]Rec. Doc. No. 1.

[29]Rec. Doc. No. 6.

[30]Rec. Doc. Nos. 7.

[31]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

7

mailbox rule on December 27, 2006.[32] The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c) (2006)).

As noted above, the State failed to brief the matters of exhaustion, timeliness, and procedural default. Nevertheless, the Court's review of the record reveals that Gifford's federal petition was not timely filed and should be dismissed for that reason.

## V. **Statute of Limitations**

The United States Supreme Court has held that "district courts are permitted, but not obligated, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition." *Day v. McDonough*, 547 U.S. 198, 209 (2006).

> [B]efore acting on its own initiative, a court must accord the parties fair notice and an opportunity to present their positions . . . and assure itself that the petitioner is not significantly prejudiced by the delayed focus on the limitation issues, and "determine whether the interests of justice would be better served" by addressing the merits or by dismissing the petition as time barred.

*Id*. at 210 (quoting *Granberry v. Greer*, 481 U.S. 129, 136 (1987)) (citations omitted).

---

[32]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Dempsey's petition on February 16, 2007, when the filing fee was paid. Dempsey's signature on the memorandum in support of the petition is dated February 2, 2007. This is the earliest date on which he could have been submitted the pleadings to prison officials for mailing. The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

Having reviewed the record, the Court can find no undue prejudice arising from the Court's consideration of the timeliness issue and justice would be served by the dismissal of this petition as time barred. The record reflects that the State's failure to raise this defense was the result of the State's apparent unfamiliarity with federal standards of habeas corpus review. *See Prieto v. Quaterman*, 456 F.3d 511 (5th Cir. 2006) (*citing Magouirk v. Phillips*, 144 F.3d 348, 360 (5th Cir. 1998). Accordingly, **petitioner is hereby specifically advised and instructed that this report and recommendation is notice to him that this court is *sua sponte* raising the issue of procedural default and that petitioner must submit any evidence or argument concerning the default as part of any objections he may file to this report.** *Magouirk*, 144 F.3d at 350, 360. The Court therefore will address limitations issue *sua sponte*.

The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final.[33] *Duncan v. Walker*, 533 U.S. 167, 179-80 (2001). Determining the finality of Gifford's conviction requires further discussion. As outlined above, Gifford entered a plea of guilty in the relevant case, No. 101930, on November 12, 2002. He was sentenced on April

---

[33]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
  A. the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
  B. the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
  C. the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
  D. the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d) (2006).

23, 2003, to serve 15 years in prison, suspended except for 60 days, with an acceptance of in-home incarceration, fines and costs, addiction treatment, and community service. Although he never actually left the jailhouse after his sentencing, this probation status was revoked by the Trial Court on July 22, 2003, when Gifford admitted to having been arrested for the second fourth-offense DWI in No. 104937.

In Louisiana, there is no appeal from the revocation of probation. *State ex rel. Clavelle v. State*, 861 So. 2d 186, 187 (La. 2003) ("No appeal lies from an order revoking probation.") (citing *State v. Manuel*, 349 So. 2d 882 (La. 1977); *State v. Rexford*, 658 So. 2d 27, 28 (La. Ct. App. 1995)). Instead, while supervisory review provides a direct means for contesting the trial court's action, the Louisiana Supreme Court has recognized that post-conviction proceedings may also afford an avenue of relief. *State ex rel. Ratcliff v. State*, 565 So.2d 923 (La. 1990). Thus, where there is a revocation, the federal court would consider the date of revocation to be the factual predicate for purposes of determining the AEDPA one-year limitations period. *See Ray v. Mitchem*, 272 F. App'x. 807, 809 (11th Cir. 2008) (parole revocations become final and the one-year limitation period begins to run for purposes of federal habeas petitions on the date parole was revoked).

In this case, however, not only was Gifford's probation revoked, but the Trial Court vacated the original sentence and imposed the 10-year sentence. The United States Supreme Court has held that, in criminal case, the judgment includes conviction and sentence. *Burton v. Stewart*, 549 U.S. 147 (2007). Thus, in the case of a re-sentencing, the federal courts have resolved that the defendant's conviction does not become final until the conclusion of direct review of that new sentence or the expiration of time for seeking such review. *United States v. Messervey*, 269 F. App'x 379, 381 (5th Cir. 2008) (citing *Burton*, 549 U.S. at 147). The AEDPA "limitations period

did not begin until both his conviction and sentence 'became final by the conclusion of direct review or the expiration of the time for seeking such review.'" *Id.* (citing 28 U.S.C. § 2244(d)(1)(A) (2006)).

In this case, affording Gifford every benefit of the law, the Court will consider his re-sentencing on July 22, 2003, to be the trigger for determining finality and for calculating the AEDPA filing period. Gifford did not seek reconsideration or appellate review of the revocation or the sentence imposed that day. His conviction and sentence therefore became final five days later, on Monday, July 28, 2003. La. Code Crim. Proc. Ann. art. 914 (2008);[34] *Butler v. Cain*, 533 F.3d 314, 317 (5th Cir. 2008) ("[A] conviction becomes final when the time for seeking further direct review in the state court expires.") (quoting *Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003)); *see*, La. Code Crim. Proc. Ann. art. 13 (2003) (weekends and holidays not included in calculation of period when it would otherwise be the last day of the period).

Under the plain language of § 2244, Gifford had until July 28, 2004, to file a timely federal application for habeas corpus relief and he failed to do so. Thus, literal application of the statute would bar Gifford's § 2254 petition as of that date unless he is entitled to tolling as provided for by the AEDPA.

Section 2244(d)(2) provides that the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. *See* 28 U.S.C. § 2244(d)(2) (2006). In order

---

[34] At the time, La. Code Crim. Proc. Ann. art. 914 required that a criminal defendant move for leave to appeal within <u>five</u> days of the order or judgment that was being appealed or of a ruling on a timely motion to reconsider a sentence. While it is true that Article 914 was later amended by La. Acts 2003, No. 949, § 1 to provide <u>30</u> days for filing of the notice of appeal, that amendment was not effective until August 15, 2003. <u>See</u> Const. Art. 3, § 19 Section 19. Because this statutory amendment became effective after Gifford's plea and sentencing, it is inapplicable to this case.

11

for a State post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 413-414 (2005); *Williams v. Cain*, 217 F.3d 303, 306-07 n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir.), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999). For purposes of the AEDPA, a timeliness calculation in Louisiana requires the application of the prison mailbox rule to state pleadings. *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams v. Cain*, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review is unavailable under [Louisiana's] procedures.'") (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999) (alteration in original), *aff'd*, 531 U.S. 4 (2000)); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, No. 99-3364, 2001 WL 995164, at *5 (3d Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same

substantive claims now being raised in the federal habeas corpus petition. *Godfrey v. Dretke*, 396 F.3d 681, 686-88 (5th Cir. 2005).

The AEDPA filing period began to run the next day, July 29, 2003, and did so for 247 days without interruption until April 1, 2004, when Gifford signed and submitted for filing a Motion to Correct Illegal Probation Violation. The motion remained pending until August 12, 2004, which was 30 days after the Trial Court denied the motion on July 13, 2004 and Gifford did not seek further review of the order.

The AEDPA filing period began to run again on August 13, 2004, and did so without interruption for the remaining 118 days, until December 8, 2004, when it expired. Gifford had no state post-conviction or other collateral review pending during that time. His next such filing was made on January 31, 2005, when he submitted his first application for post-conviction relief. This filing and any subsequent filings have no effect on the AEDPA filing period calculation. *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000).

The post-AEDPA jurisprudence also provides for equitable tolling where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal habeas corpus. *Pace*, 544 U.S. at 418; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999). Equitable tolling is warranted <u>only</u> in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. *Pace*, 544 U.S. at 418-19; *Cousin*, 310 F.3d at 848.

In this case, Gifford suggests that any delay in seeking relief should be forgiven because the state trial court failed to provide him with adequate notice of the state appellate and post-conviction

limitations periods. However, the United States Fifth Circuit Court of Appeals has long held that mistake of law or ignorance of the statutes of limitation is not sufficient to warrant equitable tolling. *Felder v. Johnson*, 204 F.3d 168, 172 (5th Cir. 2000). Thus, Gifford has not provided, and the record does not demonstrate, any basis for extending the extraordinary remedy of equitable tolling.

Gifford's federal petition is deemed filed on December 26, 2007, which is over three years after the AEDPA filing period expired on December 8, 2004. His federal petition must be dismissed as untimely filed.

**VI.** <u>**Recommendation**</u>

For the foregoing reasons, it is **RECOMMENDED** that Michael Gifford's petition for issuance of a Writ of Habeas Corpus filed pursuant to Title 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 21st day of October, 2009.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**